**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

FILED
CLERK, U.S. DISTRICT COURT

MAY 23, 2017

CENTRAL DISTRICT OF CALIFORNIA
BY: ___BH___ DEPUTY

Sadashiv Mares,

　　　　　　　Plaintiff,

　　　v.

Swift Transportation Co. of Arizona,

　　LLC et al.,

　　　　　　　Defendants.

CV 15-7920-VAP (KKx)

**ORDER DENYING MOTION TO CERTIFY CLASS (DOC. NO. 66)**

Sadashiv Mares ("Plaintiff") filed his Motion to Certify Class on February 28, 2017 ("Motion").  (Doc. No. 66.)  Swift Transportation Co. of Arizona, LLC ("Defendant") filed its opposition on March 29, 2017.  (Doc. No. 67.)  Plaintiff filed his reply on April 19, 2017.  (Doc. No. 78.)  After considering all papers filed in support of and in opposition to the Motion, as well at the arguments advanced at the May 15, 2017 hearing, the Court DENIES the Motion.

## I.　　BACKGROUND

On September 2, 2015, Plaintiff filed his amended complaint against Defendant.  (Doc. No. 20.)  Plaintiff alleges he and members of a putative class worked for Defendant, a trucking company, and were paid piece rate according to the number of miles they drove.  (Id. ¶¶ 2, 5, 6.)  Plaintiff alleges Defendant failed to authorize and permit rest periods in accordance with section 226.7 of the California Labor Code.  (Id. ¶¶ 13–14.)  Plaintiff now moves for class certification as to this claim.  (Doc. No. 66 at 15.)

## II.   EVIDENTIARY OBJECTIONS

Defendant objects to a number of Plaintiff's submitted documents on evidentiary grounds.  (Doc. No. 72.)  "Unlike a summary judgment motion under Fed.R.Civ.P. 56, [however,] a motion for class certification is not dispositive and need not be supported by admissible evidence." Parkinson v. Hyundai Motor Am., 258 F.R.D. 580, 599 (C.D. Cal. 2008); Dudley v. Brookdale Senior Living Communities, Inc., No. CV142184PSGVBKX, 2015 WL 12426082, at *1 (C.D. Cal. Mar. 24, 2015); Syed v. M-I, L.L.C., No. 1:12-CV-1718 AWI MJS, 2014 WL 6685966, at *6 (E.D. Cal. Nov. 26, 2014).  Instead, Courts may base their class certification decisions on "material[s] sufficient to form a reasonable judgment on each requirement." Blackie v. Barrack, 524 F.2d 891, 901 (9th Cir. 1975).

Defendant has provided no authority, binding or otherwise, to support its argument that Plaintiff's materials are inadmissible at the class certification stage. Thus, the Court agrees with the persuasive authority holding that evidentiary requirements should be relaxed at the class certification stage.  Accordingly, Defendant's objections are OVERRULED.

## III.   LEGAL STANDARD

Recognizing that "[t]he class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only," Federal Rule of Civil Procedure 23 demands two requirements be met before a court certifies a class. Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1432 (2013).

A party first must meet the requirements of Rule 23(a), which demands the party "prove that there are in fact sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation." Id.

United States District Court
Central District of California

Although not mentioned in Rule 23(a), the moving party must also demonstrate the class is ascertainable. Keegan v. Am. Honda Motor Co., 284 F.R.D. 405, 521 (C.D. Cal. 2012); Rodmakers, Inc. v. Newport Adhesives & Composites, Inc., 209 F.R.D. 159, 163 (C.D. Cal. 2002) ("Prior to class certification, plaintiffs must first define an ascertainable and identifiable class.").

If a party meets Rule 23(a)'s requirements, the proposed class must also satisfy at least one of the requirements of Rule 23(b). Here, Plaintiff invokes Rule 23(b)(3). (Doc. No. 66-1 at 109). Rule 23(b)(3) "allows certification if 'questions of law or fact common to class members predominate over any questions affecting only individual members,' and if 'a class action is superior to other available methods for and efficiently adjudicating the controversy.'" Doyle v. Chrysler Grp., LLC, 663 F. App'x 576, 578–79 (9th Cir. 2016).

District courts are given broad discretion to grant or deny a motion for class certification. Bateman v. Am. Multi-Cinema, Inc., 623 F.3d 708, 712 (9th Cir. 2010). The party seeking class certification bears the burden of showing affirmative compliance with Rule 23. See Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011) ("Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule."). This requires a district court to conduct a "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim." Id. Nevertheless, the merits can be considered only to the extent they are "relevant to determining whether the Rule 23 prerequisites to class certification are satisfied." Amgen Inc. v. Conn. Ret. Plans & Trust Funds, 133 S. Ct. 1184, 1195 (2013).

# IV.   DISCUSSION

## A.   ASCERTAINABLE CLASS

Before establishing numerosity, commonality, typicality, and adequacy, "the party seeking class certification must demonstrate that an identifiable and ascertainable class exists." Mazur v. eBay Inc., 257 F.R.D. 563, 567 (N.D. Cal. 2009). "A class definition should be precise, objective, and presently ascertainable," though "the class need not be so ascertainable that every potential member can be identified at the commencement of the action." O'Connor v. Boeing N. Am., Inc., 184 F.R.D. 311, 319 (C.D. Cal. 1998) (internal quotations omitted). "As long as the general outlines of the membership of the class are determinable at the outset of the litigation, a class will be deemed to exist." Id. "The order defining the class should avoid subjective standards (e.g., a plaintiff's state of mind) or terms that depend on resolution of the merits (e.g., persons who were discriminated against)." Federal Judicial Center, Manual for Complex Litigation, Fourth § 21.222 (2004); Miller v. Fuhu Inc., No. 2:14-CV-06119-CAS-ASx, 2015 WL 7776794, at *7 (C.D. Cal. Dec. 1, 2015) ("An ascertainable class exists if it can be identified through reference to objective criteria, and subjective standards such as a class member's state of mind should not be used when defining the class").

Courts will deny certification if it is difficult to determine class members at the outset.  See Tietsworth v. Sears, Roebuck & Co., No. 09-288, 2013 WL 1303100, at *3-4 (N.D. Cal. Mar. 28, 2013) (denying certification where "ascertaining class membership would require unmanageable individualized inquiry"); Bruton v. Gerber Products Co., No. 12-CV-02412-LHK, 2014 WL 2860995, at *6-7 (N.D. Cal. June 23, 2014) (denying certification when proposed class members would have to submit affidavits describing what products they purchased); Jones v. ConAgra Foods, Inc., No. C 12-01633 CRB, 2014 WL 2702726, at *10 (N.D. Cal. June 13,

2014) ("Even assuming that all proposed class members would be honest, it is hard to imagine that they would be able to remember which particular Hunt's products they purchased from 2008 to the present, and whether those products bore the challenged label statements.").

Here, Plaintiff seeks to certify the following class: "all California residents who (a) were employed by Defendants as truck drivers at any time on or after February 27, 2011, and (b) were paid on a piece rate basis." (Doc. No. 20 ¶ 6; Doc. No. 66-1 at 7.) Defendant does not dispute Plaintiff's proposed class is ascertainable. (See Doc. No. 67.) Further, the Court finds the class definition is "precise, objective, and presently ascertainable." Plaintiff's proposed class provides a clear date range, does not contain any subjective standards, and does not contain any terms that require a resolution on the merits. The proposed class members can be easily ascertained by using Defendant's employment records to identify truck drivers employed by Defendant since February 27, 2011, who lived in California. (Doc. No. 66-2 at 13.) Further, Defendant's pay records would reveal which drivers were paid on a piece rate basis. (Id. at 8.) Accordingly, the Court finds that the class is ascertainable.

## B.   RULE 23(A)

### 1.   Numerosity

To satisfy the numerosity requirement under Rule 23(a)(1), joinder of all class members must be "impracticable," but not necessarily impossible. Parkinson v. Hyundai Motor Am., 258 F.R.D. 580, 588 (C.D. Cal. 2008). Courts have not required evidence of a specific class size or identity of class members to satisfy the requirements of Rule 23(a)(1). Robidoux v. Celani, 987 F.2d 931, 935 (2d Cir. 1993).

United States District Court
Central District of California

Here, Plaintiff produced evidence showing Defendant "employed thousands of drivers in California paid on a piece rate basis." (Doc. No. 1 at 8.) Defendant does not dispute the class satisfies Rule 23's numerosity requirement. Accordingly, as requiring the joinder of possibly "thousands of drivers" would be impracticable, the Court finds that the putative class meets the numerosity requirement.

### 2.    Commonality

Commonality "requir[es] a plaintiff to show that 'there are questions of law or fact common to the class.'" Dukes, 131 S. Ct. at 2551-52 (quoting Fed. R. Civ. P. 23(a)(2)). Even a single common question will suffice. Id. at 2556.

"Rule 23(a)(2) is not 'a mere pleading standard,' so establishing commonality sometimes requires affirmative evidence, which the courts must subject to 'rigorous analysis.'" Stockwell v. City & Cnty. of San Francisco, 749 F. 3d 1107, 1111 (9th Cir. 2014) (quoting Dukes, 131 S.Ct. at 2551). This "rigor often 'will entail some overlap with the merits of the plaintiff's underlying claim.'" Id. (quoting Dukes, 131 S.Ct. at 2551). "Merits questions may be considered to the extent—but only to the extent— that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." Amgen Inc., 133 S.Ct. at 1195. "'[W]hether class members could actually prevail on the merits of their claims' is not a proper inquiry in determining the preliminary question 'whether common questions exist.'" Stockwell, 749 F.3d at 1112 (quoting Ellis v. Costco Wholesale Corp., 657 F. 3d 970, 983 n. 8 (9th Cir. 2011)). The Court, therefore, is mindful that the proper inquiry here is "whether the questions presented, whether meritorious or not, [are] common to the members of the putative class." Id. at 1113–14.

In <u>Dukes</u>, the Supreme Court provided guidance on how a court must approach the issue of commonality for purposes of class certification.  Plaintiffs must show that the class members "have suffered the same injury."  <u>Dukes</u>, 131 S.Ct. at 2551.  A single, system-wide illegal practice or policy can satisfy the commonality requirement.  <u>Id.</u> at 2553.

Plaintiff argues the key common question for this litigation is whether "as a matter of law, a piece-rate pay plan fails to compensate employees for rest period time."  (Doc. No. 66-1 at 9.)  On the other hand, Defendant argues Plaintiff has not presented a common question because (1) "Cal. Labor Code § 226.7 does not provide a remedy for plaintiff's theory of liability" and (2) "there is no evidence that [Defendant] had a common policy or practice of not providing breaks within the meaning of § 226.7(c)."  (Doc. No. 67 at 18.)[1]

To resolve the commonality issue, it is necessary to understand the specifics of Plaintiff's claim.  Plaintiff asserts that section 12 of California Industrial Welfare Commission Wage Order Number 9-2001 ("Wage Order 9"), which applies to employers in the transportation industry, states, "[e]very employer shall authorize and permit all employees to take rest periods. . . . The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof."  (Doc. No. 78 at 6; ICW Wage Order 9-2001 § 12.)  Further, Plaintiff contends California case law, as set forth in <u>Bluford v. Safeway, Inc.</u>, 216 Cal. App. 4th 864 (2013), requires the rest period

---

[1] It is unclear if Defendant is making this argument to show Plaintiff has not presented common questions or if Defendant is making this argument as a stand-alone attack on class certification.  Nonetheless, the Court will address it at this juncture.

United States District Court
Central District of California

referenced in Wage Order 9 be paid.  (Doc. No. 78 at 6.)  Plaintiff also contends that piece-rate pay "does not compensate for the ten minutes of rest period time."  (Id.) Thus, because Defendant has a uniform policy of paying drivers on a piece rate basis, it could not have complied with Wage Order 9's requirement that Defendant "authorize and permit all employees to take rest periods."  (Id.)  In other words, because (1) Bluford held the "rest periods" in Wage Order 9 cannot be compensated through solely piece rate pay and (2) Defendant only paid drivers piece rate pay, then Defendant could not have provided the "rest periods" mandated in Wage Order 9. (Id.)

Moreover, because Defendant did not abide by Wage Order 9, it is liable under 226.7(c) of the California Labor Code, which states as follows:

> If an employer fails to provide an employee a meal or rest or recovery period in accordance with a[n] . . . order of the Industrial Welfare Commission, . . . the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided.

(Id.; Cal. Labor Code § 226.7(c).)

Arguing this does not present common questions for the putative class, Defendant asserts, "Cal. Labor Code § 226.7 does not provide a remedy for plaintiff's theory of liability."  (Doc. No. 67 at 18.)  This, however, is an attack on the merits of Plaintiff's claim, and "'whether class members could actually prevail on the merits of their claims' is not a proper inquiry in determining the preliminary question 'whether common questions exist.'"  Stockwell, 749 F.3d at 1112.

United States District Court
Central District of California

Defendant also argues that "[b]ecause there is no evidence that [it] had a common policy or practice of not providing breaks within the meaning of § 226.7(c), Plaintiff's proposed class cannot be certified." (Doc. No. 67 at 18.) Plaintiff has provided such evidence, however: evidence showing Defendant required drivers to sign a Mileage Based Pay Acknowledgement Form, which states, "[m]ileage pay covers time spent engaged in essential activities normally or typically associated with a trip. . . including, but not limited to, rest break time." (Doc. No. 66-2 at 10.)

Hence, the Court finds this litigation presents a common question: whether "as a matter of law, a piece-rate pay plan fails to compensate employees for rest period time." (Doc. No. 66-1 at 9.) Additionally, the Court finds this litigation presents another common question: "whether California law applies to the putative class members' claims." Accordingly, given the presence of common questions, the Court finds Plaintiff satisfied the commonality requirement.

### 3.    Typicality

The Ninth Circuit in <u>Hanlon v. Chrysler Corp.</u> explained that "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." 150 F.3d 1011, 1020 (9th Cir. 1998). Thus, to find typicality, a "court does not need to find that the claims of the purported class representatives are identical to the claims of the other class members." <u>Haley v. Medtronic, Inc.</u>, 169 F.R.D. 643, 649 (C.D. Cal. 1996). "In other words, a claim is typical if it: (1) arises from the same event or practice or course of conduct that gives rise to the claims of other class members; and (2) is based on the same legal theory as their claims." <u>Id.</u>

Plaintiff argues his claims are typical of the class because both he and the putative class members are asserting the same claim for rest period penalties, and every claim depends on Plaintiff's "theory that a piece-rate compensation system fails to compensate for rest period time." (Doc. No. 66-1 at 8.) On the other hand, Defendant argues Plaintiff's claims are not typical because "he spent only about 25% of his worktime for [Defendant] inside California and [Plaintiff's] wage records demonstrate that in fact only 6% of his trips were entirely within California." (Doc. No. 67 at 29.) Further, Defendant argues, Plaintiff's claims are not typical because he did "not always take his rest breaks." (Id.)

The Court finds Plaintiff's claims are typical of the class. Although Defendant argues Plaintiff's claims are not typical because he did "not always take his rest breaks," Plaintiff's claim does not hinge on whether Plaintiff took his rest breaks. Instead, Plaintiff's claim alleges Defendant did not provide rest breaks in accordance with Wage Order 9. Thus, at this juncture, whether Plaintiff took his rest breaks is of no import. Further, although Defendant argues Plaintiff's claims are not typical of the putative class because "he spent only about 25% of his worktime for [Defendant] inside California," Defendant fails to show this is not typical of the putative class. Indeed, Defendant admits "[m]any over-the-road drivers with California residences delivered goods throughout the continental United States and spent very little time in California." (Doc. No. 67 at 24.) Thus, Plaintiff has shown his claims and those of the putative class members all arise from Defendant's alleged failure to provide rest breaks in accordance with California law, and all are asserting liability based on Plaintiff's theory as discussed above. Thus the Court finds Plaintiff's claim "(1) arises from the same event or practice or course of conduct that gives rise to the claims of other class members; and (2) is based on the same legal theory as their claims." Accordingly, Defendant's

United States District Court
Central District of California

arguments regarding typicality are unconvincing, and the Court finds Plaintiff's claims are typical of the class.

### 4.      Adequacy of Representation

Rule 23(a)(4) demands "representative parties will fairly and adequately protect the interests of the class." This determination "is a question of fact that depends on the circumstances of each case." In re Nat'l W. Life Ins. Deferred Annuities Litig., 2010 WL 2735732, at *5 (S.D. Cal. July 12, 2010) (citing McGowan v. Faulkner Concrete Pipe Co., 659 F.2d 554, 559 (5th Cir. 1981)). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class member[s], and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Hanlon, 150 F.3d at 1020.

#### i)      Adequacy of Plaintiff

Plaintiff argues he has no conflicts with other class members and will be able to prosecute the action vigorously on behalf of the class. (Doc. No. 66-1 at 8.) In Plaintiff's declaration, he states, "[he] understand[s] that [he is] the named plaintiff in this lawsuit, and that this lawsuit seeks, in part, to recover one hour of pay for violations of California's rest period laws." (Doc. No. 66-3 ¶ 5.) Plaintiff states he knows the case is filed as a class action, and he has no conflicts with any other class members. (Id. ¶ 5–6.) Plaintiff also states he has been active in assisting with the investigation of this case, responded to discovery requests, and is available for future appearances related to the case. (Id. ¶ 7.) The Court also notes that in furtherance of this case, Plaintiff has already undergone a lengthy deposition. (Doc. No. 70-1.)

United States District Court
Central District of California

Defendant argues Plaintiff is not an adequate class representative because "he stated that he was not aware he was a class representative and did not know if this case had any class representative." (Doc. No. 67 at 29.)  This statement was correct. The Court has not yet appointed Plaintiff as a class representative, and the putative class has no representative with respect to the claims brought in this case.

Defendant argues Plaintiff is not an adequate class representative because he "stated that he did not know any of his duties in this case, other than to appear for deposition and possibly trial." (Id.)  At his deposition, Plaintiff conveyed a general understanding that his duties were to provide testimony and assist with the prosecution of the putative class members' case. (Doc. No. 70-1 at 5–7.)  Further, Plaintiff has demonstrated knowledge of the nature of his suit and how it will proceed as a class action. (Doc. No. 78-1 at 5–6.)

Next, Defendant argues, "Plaintiff could not explain at his deposition why he moved for class certification only as to his claim for Cal. Labor Code § 226.7 penalties." (Doc. No. 67 at 30.)  Thus, Defendant argues, this shows Plaintiff is keeping "the potentially more valuable minimum wage and derivative claims for himself" and situating himself to "sell out the class on its claims to achieve a greater recovery on his individual claims." (Id.)  This argument is unconvincing.  There are a vast number of strategic reasons Plaintiff and his counsel may have chosen to pursue class action claims only for section 226.7 penalties.  As both parties are aware, class certification is a rigorous process, and assertion of additional claims may interfere with a class's ability to overcome the numerosity, commonality, typicality, predominance, and superiority hurdles of class certification.  Accordingly, the fact Plaintiff and his counsel chose to certify only one claim does not indicate Plaintiff is situating himself to "sell out the class."

United States District Court
Central District of California

In sum, the Court finds that Plaintiff is an adequate class representative.

### i) *Adequacy of Plaintiff's Counsel*

Plaintiff's counsel, Mr. Clapp, produced a declaration stating he has "specialized in representing employees in employment-related litigation for over 35 years." (Doc. No. 66-2 at 2.)  In his career, Mr. Clapp has litigated several appellate cases and tried 15 cases "to jury verdict, court judgment, or arbitration award."  (Id.) Further, Mr. Clapp's firm "routinely prosecutes large employment law wage and hour class actions."  (Id. at 3.)  Defendant does not argue Mr. Clapp is inadequate. (See Doc. No. 67.)  Accordingly, the Court finds Mr. Clapp can adequately represent the class.

As Plaintiff has met the Rule 23(a) requirements, the Court turns to the Rule 23(b) requirements.

## C.   RULE 23(B)

Plaintiff seeks class certification under Rule 23(b)(3).  Rule 23(b)(3) applies where "the court finds that the questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  This is commonly called the "predominance" and "superiority" analysis.  Hanlon, 150 F.3d at 1023.

### 1.   Predominance

"Even if Rule 23(a)'s commonality requirement may be satisfied by [a] shared experience, the predominance criterion is far more demanding."  Id. at 623–

24.  The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation" and "focuses on the relationship between the common and individual issues."  Id. at 1022.  The predominance inquiry "'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'"  Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036, 1045, 194 L. Ed. 2d 124 (2016).  "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'"  Id. (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196–197 (5th ed. 2012)); Torres v. Mercer Canyons Inc., 835 F.3d 1125, 1134 (9th Cir. 2016).

"Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." Erica P. John Fund, Inc. v. Halliburton Co., 563 U.S. 804, 809–10 (2011). "Where, after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3)." Klay v. Humana, Inc., 382 F.3d 1241, 1255 (11th Cir. 2004).  Predominance, however, requires only that "questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." Amgen Inc. v. Connecticut Ret. Plans & Trust Funds, 133 S. Ct. 1184, 1191 (2013) (emphasis in original).  Further, predominance is not "a matter of nose-counting. Rather, more important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over

14

individualized questions which are of considerably less significance to the claims of the class" Torres, 835 F.3d at 1134. "Claims alleging that a uniform policy consistently applied to a group of employees is in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment." Brinker Rest. Corp. v. Superior Court, 53 Cal. 4th 1004, 1033 (2012).

"[T]he need for individualized findings as to the amount of damages does not defeat class certification." Vaquero v. Ashley Furniture Indus., Inc., 824 F.3d 1150, 1155 (9th Cir. 2016). It is only necessary putative class members "be able to show that their damages stemmed from the defendant's actions that created the legal liability." Pulaski & Middleman, LLC v. Google, Inc., 802 F.3d 979, 987–88 (9th Cir. 2015), cert. denied, 136 S. Ct. 2410, 195 L. Ed. 2d 780 (2016).

                    *i)*        *The Elements of Plaintiff's Claim and Related Common Inquiries*

Plaintiff claims Wage Order 9, which applies to employers in the transportation industry, states, "[e]very employer shall authorize and permit all employees to take rest periods. . . . The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof." (Doc. No. 78 at 6; ICW Wage Order 9-2001 § 12.) Further, California case law, as set forth in Bluford v. Safeway, Inc., 216 Cal. App. 4th 864 (2013), requires the rest period referenced in Wage Order 9 must be paid and that piece rate pay "does not compensate for the ten minutes of rest period time." (Doc. No. 78 at 6.) Thus, because Defendant has a uniform policy of paying drivers on a piece rate basis, Defendant could not have complied with Wage Order 9's requirement that employers "authorize and permit all employees to take rest periods." (Id.) In other words, because (1) Bluford held the "rest periods" in Wage Order 9 cannot be compensated solely through piece rate pay and (2) Defendant

only paid drivers piece rate, Plaintiff claims Defendant could not have provided the "rest periods" mandated in Wage Order 9.  (Id.)

Plaintiff argues this one legal question—whether "a piece-rate plan fails to compensate employees for rest period time"—will predominate the litigation.  (Doc. No. 66-1 at 9.)  The Court also anticipates that, in order for the putative class to litigate its claim, the Court will need to determine if California law applies to the putative class members' claims, whether Defendant had a piece rate pay policy, and whether Bluford is the current state of California law.

ii)   *Defendant's Argument That Individual Choice of Law Issues Will Predominate*

Defendant argues individual choice of law issues will predominate because "[m]any over-the-road drivers with California residences delivered goods throughout the continental United States and spent very little time in California." (Doc. No. 67 at 24.)  Thus, "because California applies a presumption against the extraterritorial application of its laws," the Court will need to conduct an in depth choice of law analysis to see if California law applies to putative class members' claims for rest periods outside of California.  (Id. at 23, 24–25.)  Plaintiff does not contest there will be individualized issues regarding whether California law applies to putative class members once they leave California. (Doc. No. 78 at 13–14.) Nonetheless, as to claims within California, Plaintiff argues there would be no individualized issues involved in determining whether California law applies to the putative class members claims.  (Id.)

"[A] forum state may apply its own substantive law to the claims of a nationwide class without violating the federal due process clause or

16

full faith and credit clause if the state has a 'significant contact or

significant aggregation of contacts' to the claims of each class member

such that application of the forum law is 'not arbitrary or unfair.'"

Washington Mut. Bank, FA v. Superior Court, 24 Cal. 4th 906, 919 (2001) (quoting

Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 821–22 (1985)).

"Under California's choice of law rules, the class action proponent bears the initial burden to show that California has 'significant contact or significant aggregation of contacts' to the claims of each class member." Mazza v. Am. Honda Motor Co., 666 F.3d 581, 589 (9th Cir. 2012). Once the class action proponent carries this burden, California "require[s] the other side to shoulder the burden of demonstrating that foreign law, rather than California law, should apply to class claims." Washington Mut., 24 Cal. 4th at 919. "California law may be used on a class wide basis so long as its application is not arbitrary or unfair with respect to nonresident class members, and so long as the interests of other states are not found to outweigh California's interest in having its law applied." Id. at 921.

To determine whether the interests of other states outweigh

California's interest, the court looks to a three-step governmental

interest test:

First, the court determines whether the relevant law of each of the

potentially affected jurisdictions with regard to the particular issue in

question is the same or different.

Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists.

Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately applies the law of the state whose interest would be more impaired if its law were not applied.

Mazza v. Am. Honda Motor Co., 666 F.3d 581, 590 (9th Cir. 2012) (quoting McCann v. Foster Wheeler LLC, 48 Cal. 4th 68, 81–82 (2010)).

Here, Defendant is correct that if Plaintiff were to pursue his claims based on work performed outside of California, the Court would need to determine whether "California has 'significant contact or significant aggregation of contacts' to the claims of each class member." Mazza, 666 F.3d at 589.  Further, the Court would need to determine if the "interests of other states are not found to outweigh California's interest in having its law applied."  Washington Mut., 24 Cal. 4th at 921. Since the putative class members drove trucks throughout the country, this would involve a detailed inquiry into the employment laws of each state, the number of rest breaks each class member was due in each state, and the amount of contact each class member had with each state.  An inquiry of this magnitude would cause the "non-common, aggregation-defeating, individual issues" to predominate over the "common, aggregation-enabling, issues" discussed above.  Tyson Foods, Inc., 136 S.

18

Ct. 1036 at 1045.  Indeed, in pursuit of rest period claims outside of California, after adjudication of the class wide issues, individual putative class members would "still [need to] introduce a great deal of individualized proof [and] argue a number of individualized legal points to establish" California law applies to their out of state claims.  Klay, 382 F.3d at 1255.  Thus, Plaintiff's pursuit of out of state rest period claims would cause individualized issues to predominate and defeat Plaintiff's attempt at class certification.  Accordingly, the Court declines to certify Plaintiff's putative class claims regarding rest periods outside of California.

Plaintiff's putative class claims for rest periods in California, however, do not require the same individualized inquiry as the out of state claims.  This is because if the putative class claims are limited to California, then they would only relate to California residents and work performed in California.  With out of state claims excluded, California is the only state to which the putative class members' claims have any contact.  Accordingly, if the out of state claims are excluded, Plaintiff can bear his "initial burden to show that California has 'significant contact or significant aggregation of contacts' to the claims of each class member" without any individualized inquiry.  Mazza, 666 F.3d at 590.

Assuming Defendant can then show the labor laws of each of the potentially affected states are different than California's and a true conflict exists, the only issues to be litigated would be (1) the nature and strength of each state's interest in Plaintiff's claim and (2) what state's interests would be most impaired if its law was not applied.  Both of these issues can be litigated on a class wide basis, because these inquiries would relate solely to Plaintiff's claims, which are uniformly limited to work performed in California by California residents.  Thus, for the purpose of these claims, putative class members would not "need to present evidence that varies

19

from member to member."  Accordingly, the Court finds individual issues do not predominate the choice of law determination regarding the putative class's claims based on rest periods due in California.

In sum, although individual issues predominate the choice of law issues regarding putative class members' out of state claims, common issues predominate choice of law issues regarding their claims within California.

### iii)   Plaintiff's Claims Within California

Even when Plaintiff's claims are limited to those based upon rest breaks owed to drivers while they were working within California, however, the Court holds individual issues will predominate the claims.  This is because Plaintiff claims the putative class members are entitled to separately compensated rest breaks under Wage Order 9.  (Doc. No. 78 at 6; ICW Wage Order 9-2001 § 12.)  Wage Order 9 states employees who work at least three and a half hours a day are entitled to rest periods.  ICW Wage Order 9-2001 § 12.  Further, Wage Order 9 states, "rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof."  Id.   Accordingly, for drivers to be included in the putative class they would need to work at least three and a half hours per day at solely a piece rate.  Also, as discussed above, these three and a half hours would need to be worked within California to avoid individualized choice of law issues predominating drivers' claims.

This means that in order for the Court to find each driver's "damages stemmed from [D]efendant's actions that created the legal liability," it would first need to determine whether each driver worked in California for at least three and a half consecutive hours.  Pulaski & Middleman, LLC, 802 F.3d at 987–88.  This is

not the case for all drivers because many drivers regularly left California before working the necessary three and a half hours required to be entitled to a rest break. (E.g., Doc. No. 70-1 at 15; Doc. No. 73-12 ¶ 4; Doc. No. 74-2 ¶ 5; Doc. No. 74-11 ¶ 4.) Thus, to establish Defendant's liability to each putative class member, the Court would need to examine each class member's wage statements and load files to determine if they were in California long enough to be entitled to a rest period. (Doc. No. 71 at 2; Doc. No. 66-2 at 20.)  In addition, at the liability stage of the proceedings, if the Court needed to determine the amount of damages due to each putative class member, this would require "a manual review of [each putative class member's] wage statements," which Defendant has presented evidence showing would take at least four hours per putative class member.  (Doc. No. 71 at 2.)

Further, Defendant has shown it has 29 methods of pay in addition to mileage based pay.  (Doc. No. 70-5 at 36–39.)  Of these 29 additional types of pay, 10 are hourly rates.  (Id.)  As discussed above, Plaintiff's claims apply only to drivers who were entitled to rest periods while being paid on a piece rate basis.  Thus, any drivers who became entitled to rest periods only while they were being paid hourly were not injured by Defendant's piece rate pay policy.  Accordingly, these drivers could not show their "damages stemmed from [D]efendant's actions that created the legal liability."

The Court is mindful that Ninth Circuit law holds "the need for individualized findings as to the amount of damages does not defeat class certification." Vaquero, 824 F.3d at 1155; see Yokoyama v. Midland Nat'l Life Ins. Co., 594 F.3d 1087, 1094 (9th Cir.2010).  Also, it is only necessary putative class members "be able to show that their damages stemmed from the defendant's actions that created the legal liability."  Pulaski & Middleman, LLC, 802 F.3d at 987–88; see

21

United States District Court
Central District of California

Leyva v. Medline Indus. Inc., 716 F.3d 510, 513 (9th Cir. 2013).   Here, however, individualized questions predominate not only putative class members' damages inquiries, but also whether each putative class member has any damages stemming from Defendant's actions.   Indeed, drivers who (1) were paid on solely an hourly basis when they took rest breaks or (2) were paid on a piece rate basis and always left California within three and a half hours of beginning work would not be able to show their liability "stemmed from [D]efendant's actions."   Thus, as the Court would need to examine driver logs and related documents to determine whether each driver worked at a piece rate for at least three and a half hours in California, individual issues would predominate.

In sum, the Court finds individual issues predominate the determination of whether each putative class member suffered damages from Defendant's actions. Accordingly, Plaintiff's claims do not satisfy the predominance requirement.

### 2.   Superiority

"[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy."   Wolin v. Jaguar Land Rover N. Am., LLC, 617 F.3d 1168, 1175 (9th Cir. 2010).   Rule 23(b)(3) sets forth four factors for courts to consider when making superiority determinations.   Fed. R. Civ. P. 23(b)(3).   The first factor is "the class members' interests in individually controlling the prosecution or defense of separate actions." Fed. R. Civ. P. 23(b)(3)(A).   Where damages suffered by each putative class member are not large, this factor weighs in favor of certifying a class action.   Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1190 (9th Cir.), opinion amended on denial of reh'g, 273 F.3d 1266 (9th Cir. 2001).   The second factor is "the extent and nature of any litigation concerning the controversy already begun by or against class

22

members." Fed. R. Civ. P. 23(b)(3)(B).  This factor is intended to assure judicial economy and reduce the possibility of multiple lawsuits.  <u>Zinser</u>, 253 F.3d at 1191.  The third factor is "the desirability or undesirability of concentrating the litigation of the claims in the particular forum."  Fed. R. Civ. P. 23(b)(3)(C).  When potential plaintiffs and evidence are scattered about the country, this factor weighs against class certification.  <u>Zinser</u>, 253 F.3d at 1192.  The final factor is "the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3)(D).  "[W]hen the complexities of class action treatment outweigh the benefits of considering common issues in one trial, class action treatment is not the 'superior' method of adjudication."  <u>Zinser</u>, 253 F.3d at 1192.

Here, Plaintiff produced evidence showing Defendant "employed thousands of drivers in California paid on a piece rate basis."  (Doc. No. 1 at 8.)  Additionally, as penalties are sought only for rest breaks not provided in California, the amount of recovery for many class members will be relatively small.  Hence, the Court finds the putative class members' interests in controlling the litigation would be minimal, and requiring each member to file an individual suit would lead to an unnecessary proliferation of litigation.  Also, as neither party produced any evidence of litigation already addressing Plaintiff's particular claim, certifying this class would not simply add one case more to an already existing sea of litigation.  Moreover, as Plaintiff's claims are limited to California, there is no indication plaintiffs and evidence would be scattered about the country, and thus concentrating litigation in this forum is desirable.

The "likely difficulties in managing" this putative class action, however, are extensive.  As discussed above, in order for the Court to find each driver's "damages stemmed from the defendant's actions that created the legal liability," the Court

would need to individually examine each class member's wage statements and load files.  (Doc. No. 71 at 2; Doc. No. 66-2 at 20.)  This is because drivers who (1) were paid on solely an hourly basis when they took rest breaks or (2) were paid on a piece rate basis and always left California within three and a half hours after beginning work would not be able to show their damages "stemmed from [D]efendant's actions." <u>Pulaski & Middleman, LLC</u>, 802 F.3d at 987–88.  Further, as Defendant "employed thousands of drivers in California paid on a piece rate basis," and each driver has load files from every day worked, this would be a tremendous undertaking.  (Doc. No. 1 at 8.)  Thus, given the extent of the "likely difficulties in managing" this putative class action, the Court finds this factor weighs heavily against class certification.

Accordingly, given the extent of the "likely difficulties in managing" this putative class action, the Court finds a class action would not be the superior method of adjudicating the putative class's claims.  As Plaintiff has not met Rule 23(b)(3)'s requirements, the Court declines to certify Plaintiff's proposed class.

## V.     CONCLUSION

For the reasons stated above, Plaintiff's Motion is DENIED.

**IT IS SO ORDERED.**

Dated:    5/23/17

_____
Virginia A. Phillips
Chief United States District Judge

United States District Court
Central District of California

24